## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QBE Specialty Insurance Company<br>Wall Street Plaza,<br>88 Pine Street<br>New York, New York 10005 | : <br> : <br> : <br> : |
| | : |
| v. | :    CIVIL NO.: |
| | : |
| Absolute Abstract Agency, Inc.<br>d/b/a Homestead Land Services<br>3360 Route 940<br>Mt. Pocono, PA 18344 | : <br> : <br> : <br> : |
| | : |
| and | : |
| | : |
| Edward C. Kurtz<br>3360 Route 940<br>Mt. Pocono, PA 18344 | : <br> : <br> : |
| | : |
| and | : |
| | : |
| Scott M. Marinelli<br>7 Judy Court<br>Annandale, NJ 08801 | : <br> : <br> : |
| | : |
| and | : |
| | : |
| First American Title Insurance Company<br>First American Way<br>Santa Ana, CA 92707    : | : <br> : |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff QBE Specialty Insurance Company brings this action for declaratory relief pursuant to 42. U.S.C. §2201 et. seq. against Absolute Abstract Agency, Inc d/b/a Homestead Land Services, Edward C. Kurtz, Scott M. Marinelli and First American Title Insurance Company and in support thereof states the following:

1

## PARTIES

1.      Plaintiff QBE Specialty Insurance Company ("QBE") is a corporation organized and existing under the laws of the State of North Dakota with its principal place of business at 55 Water Street, New York, New York 10005.

2.      Defendant Absolute Abstract Agency, Inc. d/b/a Homestead Land Services ("Absolute") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 3360 Route 940, Mt. Pocono, PA 18344.

3.      Defendant Edward C. Kurtz ("Kurtz") is a citizen of the Commonwealth of Pennsylvania, resides in the Commonwealth of Pennsylvania and maintains  his place of business at 3360 Route 940, Mt. Pocono, PA 18344.

4.      Defendant Scott M. Marinelli ("Marinelli") is a citizen of the State of New Jersey and resides at 7 Judy Court, Annandale, NJ 08801 and at all times relevant hereto engaged in substantial activities in Monroe County, Commonwealth of Pennsylvania from which this action arises.

5.      First American Title Insurance Company ("First American") is a corporation organized and existing under the laws of the State of Nebraska with it principal place of business at First American Way, Santa Ana, CA 92707.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction for this proceeding is based upon complete diversity of citizenship between the parties and an amount in controversy in excess of Seventy-Five Thousand ($75,000.00), pursuant to 28 U.S.C §1332.

7.    Venue in this district is based upon 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to this action, and set forth in part herein, occurred.

## BACKGROUND

8.    At all times relevant hereto, Absolute was licensed by the Commonwealth of Pennsylvania, Department of Insurance to act as a resident title insurance agency under License 451907.

9.    At all times relevant hereto, Kurtz was licensed by the Commonwealth of Pennsylvania, Department of Insurance to act as a resident title agent under License 121040.

10.    At all times relevant hereto, Kurtz was the president and a shareholder of Absolute.

11.    At all times relevant hereto First American was licensed to issue title insurance in the Commonwealth of Pennsylvania.

12.    On or about March 26, 2010, Absolute entered into an agency agreement with First American whereby Absolute was appointed by First American as a non-exclusive policy issuing-agent for First American in the Commonwealth of Pennsylvania. (Exhibit A)

13.    The above described agency agreement required that Absolute, among other things, maintain errors and omissions insurance at certain prescribed limits.

14.    As of May 16, 2016, and subsequent thereto or unknown times prior thereto, Marinelli was a principal, partner, officer, director, stockholder, trustee and/or employee of Absolute and performed Professional Services on behalf of Absolute, as that term is defined by the Policy.  (Exhibit B)

15.    On May 20, 2017, in accordance with its obligation to maintain errors and omissions insurance, Kurtz, as President of Absolute, signed and submitted to QBE an application for the insurance ("Application") (Exhibit C) as required by First American. The application included numerous representations intended to induce QBE to issue the requested policy including but not limited to the following:

11. a.  Complete the following with a list of officers, directors, partners, and professional employees, indicating job description and the number of years of experience in the title industry.  If less than 3 years, please send resumes.

| Name | Title Agent | Abstractor | Lawyer | Closing/ Escrow Agent* | Other | # Years Exp. |
|---|---|---|---|---|---|---|
| ELWOOD R. KURTZ | 20 yrs | 20 yrs | | 20 yrs | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*Complete the closing and escrow agent supplement if any closing and/or escrow services are provided.

\*\*\*

12. If licensing is required, are you and all appropriate individuals properly licensed?  ☒ Yes   ☐ No

\*\*\*

26. Have you, any of your employees or any other person proposed for insurance, ever been subject to disciplinary action by a state licensing agency or other regulatory body?   ☐ Yes   ☒ No
    If yes, provide explanation on a separate sheet.

\*\*\*

16.    In addition to the above representations in the Application, Absolute stated:

24. Have any claims been made in the past 5 years against you, your predecessors in business, or any of the past or present partners, officers, directors, or employees?  ☒ Yes   ☐ No
    If yes, the Supplemental Claim form must be completed.

17.     The Supplemental Claim Form (Exhibit D) completed by Kurtz on behalf of Abstract described only a claim in 2015/2016 by Michael and Edward Gleason arising out of alleged errors and omissions in 2000/2001.

18.     Finally, Kurtz signed the following certification to the Application (Exhibit C)

**FRAUD STATEMENT**
I DECLARE THAT THE STATEMENTS MADE IN THIS APPLICATION ARE COMPLETE AND TRUE.

Any person who, with the intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud and subject to fines and/or imprisonment. Any changes in your operation must be reported to your agent.

Completion and submission of this application does not bind the company to complete the insurance. No coverage will be effected until receipt of written instructions and premium payment.

_Signature of Applicant_          _Title_          _Date_

19.     In reliance upon the truth of the statements and representations in the Application, QBE issued a Title Agents, Abstractors and Escrow Agents Professional Liability Policy, a claims-made policy, Policy No. STA10158-00, for the period May 25, 2017 to May 25, 2018 to Absolute Abstract Agency, Inc d/b/a Homestead Land Services. (the "Policy"). (Exhibit E)

20.     The Policy "Provisions" specifically state that the Policy is issued "in consideration of the payment of the premium and in reliance upon the statements in the Application and its attachments and any materials submitted therewith, all of which were made a part of the Policy. (Exhibit E)

21.     By its terms, the Policy afforded coverage to the Named Insured [Absolute] and, among others, "any past, present or future principal, partner, officer, director, stockholder, trustee or employee of the Named Insured but only with respect to Professional Services performed on behalf of the Named Insured" as well as independent contractors who are natural

persons, . . . , but only while acting under the direct supervision of the Named Insured and on the Named Insured's behalf." (Exhibit E)

22.    Section VII of the Policy: Conditions states:

B.    Notice of **Claims**, or Potential **Claims**

1.  Notice of a **Claim**

As a condition precedent to the insurer's obligations under this Policy, an **Insured** shall give written notice to the Insurer to the address listed in Item 6 of the Declarations as soon as practicable, but in no event later that 60 days after the end of the **Policy Period** of any **Claim** made against any **Insured.**  The **Insured** shall immediately forward to the Insurer every demand, notice, summons or other process or pleading received by the **Insured** or its representative.  An **Insured** will not, except at its own cost, voluntarily make any payment, assume any obligation, or incur any expense.  There is no coverage under this Policy for any such payment, obligation or expense.

2.  Notice of a potential **Claim**

If during the **Policy Period** an **Insured** shall become aware of any **Wrongful Act** that may reasonably be expected to be the basis of a **Claim** against the **Insured** and if the **Insured** shall during the **Policy Period** give written notice to the Insurer to the address listed in Item 6 of the Declarations of such **Wrongful Act** and the reason for anticipating a **Claim**, including the:

a.  specific **Wrongful Act**;

b.  **Damages** which have or may result from such **Wrongful Act**;

c.  circumstances by which the **Insured** first became aware of such **Wrongful Act**

then any such **Claim** that may subsequently be made against the **Insured** arising out of such **Wrongful Act** shall be deemed for the purposes of this Policy to have been made during the **Policy Period**.

****

F.  Representations

By accepting this Policy, the **Named Insured** agrees that:

1.  the statements in the applications are accurate and complete;

2.  those statements are material representations the **Named Insured** made to the Insurer; and

6

> 3.    the Insurer have issued this Policy in reliance upon the **Named Insured's** representations.

(Exhibit E)

23.    On March 21, 2018, the premium finance company through which Absolute had financed the premium for the Policy notified Absolute that the Policy was to be canceled as of March 24, 2018 for nonpayment of the installment premium. (Exhibit F)

24.    On March 30, 2018, QBE received the Policy cancellation (Exhibit F) from its agent, effective March 24, 2018, as a result of Absolute's failure to pay the required installment premium to the premium finance company.

25.    The Policy was canceled for nonpayment of premium effective March 24, 2018 and the appropriate premium was returned to Absolute. (Exhibit G)

26.    On April 11, 2018, QBE received a request from the premium finance company to reinstate the Policy.  QBE informed Absolute that the Policy could not be reinstated without completion by Absolute of a Declaration of No Known Claims.

27.    On April 17, 2018 QBE received a Declaration of No Known Claims ("Declaration") (Exhibit H), executed by Kurtz, as president of Absolute, purportedly on April 9, 2018.  The Declaration signed by Kurtz states:

**THE BALANCE OF THIS PAGE IS INTENTIONALLY BLANK**

### DECLARATION
### NO KNOWN CLAIMS

The Applicant, **Absolute Abstract Agency, Inc. dba Homestead Land Services**, in support of its application to Underwriters for insurance, declares that, except as disclosed in writing to Underwriters or to its previous cyber liability and/or professional liability insurer, Applicant is not aware of, and no agent, employee, officer or other representative of Applicant has any knowledge of any claim, or any facts, circumstances, situations or events that could reasonably be expected to result in a claim, against Applicant or its past or present partners, officers, directors or employees, which may fall within the scope of coverage of the proposed insurance.

IT IS AGREED THAT IF SUCH KNOWLEDGE OR INFORMATION EXISTS, ANY CLAIM ARISING THEREFROM (WHETHER OR NOT DISCLOSED HEREIN), IN ADDITION TO ANY OTHER REMEDY UNDERWRITERS MAY HAVE, IS EXCLUDED FROM THE PROPOSED COVERAGE.

IT IS FURTHER AGREED THAT THIS DECLARATION SHALL BE DEEMED PART OF THE POLICY AND THE STATEMENT MADE THEREON SHALL BE DEEMED AN EXPRESS WARRANTY FOR ALL INSUREDS WHICH HAS BEEN RELIED UPON BY UNDERWRITERS PURSUANT TO THE ISSUANCE OF THIS COVERAGE.

Signed: _____

Position: _____President_____
(Principal Owner, President, CEO or Chairman)

Dated: _____4|9|2018_____

(Exhibit H)

8

28.     In signing the Declaration, Kurtz knew that in reinstating the Policy QBE would rely upon the truthfulness and accuracy of the representations set forth in the Declaration.

29.     In reliance upon the Application and the Declaration, QBE reinstated the Policy on April 17, 2018.

### THE UNDERLYING SUIT

30.     On April 20, 2018, First American filed a complaint against Absolute Abstract Agency, Inc. d/b/a Homestead Land Services, Elwood C. Kurtz and Scott K. Marinelli in the Court of Common Pleas of Monroe County, Pennsylvania at 2793 Civ 2018 ("Lawsuit" or "Complaint") (Exhibit I) seeking damages in connection with certain breaches by Absolute of its agency agreement with First American. In addition, First American sought a preliminary injunction.

31.     The Complaint alleged that:

10.     On or about March 26, 2010, Plaintiff and Homestead entered into an agency agreement whereby Homestead was appointed as a non-exclusive policy issuing agent for Plaintiff in Pennsylvania (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit "A."

11.     At the time of the execution of the Agreement, Kurtz represented that he was the sole shareholder of Homestead.

12.     As the sole shareholder and individual responsible for the operations of Homestead, Kurtz was approved as an individual licensee for Plaintiff.

                                          ***

23.     Kurtz was the initial sole shareholder of Homestead.

24.     Pursuant to paragraph 2(n) of the Agreement, Homestead was required to provide Plaintiff with written notices of any change in ownership of Homestead.

25.     It is believed and therefore averred that at some time in 2016, Kurtz entered into an agreement whereby he agreed to transfer, or actually transferred, certain ownership interests and control of Homestead to Marinelli.

9

26.     Neither Kurtz nor Marinelli provide notice to Plaintiff of transfer.

27,     As a result of the failure to provide notice, Plaintiff was precluded from conducting any investigation as to the fitness of Marinelli to act as a principal of one of its policy issuing agents.

28.     Had Plaintiff been provided that opportunity, Plaintiff would have discovered a suspicious past for Marinelli, including but not limited to:

      a.     Marinelli's wrongful conduct in connection with the operation of a title agency in New Jersey;

      b.     Marinelli's joinder as a defendant in a legal proceeding filed by North American Title Insurance Company against Marinelli and others in connection with Tide Matters, LLC, a New Jersey title agency;

      c.     the fact that the State of New Jersey initiated an action to suspend Marinelli's license to practice law and that Marinelli is no longer licensed to practice law in the State of New Jersey;

      d.     the revocation of Marinelli's insurance license by the State of Maryland;

      e.     Marinelli's wrongful conduct in connection with the operation of another title agency, ESQ Title; and

      f.     the issuance of fines and other orders against Marinelli by the State of Washington Department of Financial Institutions.

29.     Had Plaintiff conducted an investigation into Marinelli's background, it would have terminated Homestead as a policy issuing agent.

32.     First American further alleged in the Complaint that:

    (a)     in March 2018 it received a claim from Atlantic Home Mortgage indicating that its mortgage was not recorded from a transaction closed by Absolute (Complaint ¶ ¶ 32-39);

    (b)     in connection with its investigation, First American discovered that Absolute had not recorded documents on numerous transactions (Complaint ¶ ¶ 32-39);

    (c)     Absolute could not account for monies collected for recording fees and transfer taxes (Complaint ¶ ¶ 46-54);

    (d)     First American in accordance with its contractual and statutory right (40 P.S. §910-26.1(6)) to obtain access to all files, accounts and records of its agent in this case, Absolute, sought but was unable to obtain from Absolute settlement files and unrecorded original documents. Further, Absolute failed and refused to deliver a number of unrecorded documents. (Complaint ¶ ¶ 55-70); and

(e)     Absolute and Kurtz and Marinelli refused to provide First American with access to the recording bank account or provide any information regarding that account (Complaint ¶ ¶ 71-74).

33.     First American sought specific performance of the agent agreement and injunctive relief with regard to the obligations of Absolute and Kurtz and Marinelli. (Complaint ¶ ¶ 77-86).

34.     On that same date, April 20, 2018, because of the numerous violations of the agency agreement by Absolute, First American terminated its agency agreement with Absolute.

35.     On April 30, 2018 after testimony and argument with respect to First American's motion for a preliminary injunction, the Honorable Arthur L. Zulick granted the motion of First American and, in part, the following order was entered:

ORDERED AND DECREED that a Preliminary Injunction is issued as follows:

Defendants, Absolute Abstract Agency, Inc. dba Homestead Land Services, Elwood C. Kurtz and Scott M. Marinelli (collectively, "Defendants"), are enjoined from engaging in any further activity or business on behalf of Plaintiff or holding themselves out in any way as a policy issuing agent for Plaintiff or as having any authority to act for Plaintiff.

Defendants shall immediately deliver to Plaintiff for inspection and copying any and all books and records of Homestead in any way relating to title insurance issued by Homestead for Plaintiff.

(Exhibit J)

**DEMAND FOR COVERAGE, ISSUANCE OF**
**RESERVATIONS OF RIGHTS AND APPOINTMENT OF COUNSEL**

36.     Subsequent to the hearing on the motion for preliminary injunction, on May 4, 2018, counsel for Absolute and Kurtz made demand upon QBE for coverage and defense under the Policy in connection with the claims made and damages sought by First American in its Lawsuit. Subsequently Marinelli, individually, made the same demand upon QBE.

37.     QBE agreed to appoint counsel and defend Absolute, Kurtz and Marinelli subject to reservations of rights and disclaimer of coverage issued to Marinelli on June 20, 2018 and Absolute and Kurtz on July 5, 2018. (Exhibits K, L and M, respectively).

38.     Subsequent to the issuance of the reservations of rights, QBE continued its investigation of the claim and as part of that investigation, obtained the transcript of the April 30, 2018 hearing.  As a result of testimony set forth in that transcript, QBE issued a supplemental reservation of rights to Absolute, Kurtz and Marinelli on October 18, 2018. (Exhibits N, O and P).

39.     For the reasons set forth below and in accordance with applicable law, QBE now seeks a declaration from this Court rescinding the Policy *ab initio*, issuance of an order permitting counsel for Absolute, Kurtz and Marinelli to withdraw subject to their obligations under the Pennsylvania Rules of Professional Conduct and the entry of judgment against Absolute, Kurtz and Marinelli for all legal fees and costs paid on their behalf in defense of the First American Lawsuit.

### FRAUD AND MISPRESENTATIONS OF ABSOLUTE AND KURTZ IN THE APPLICATION FOR CLAIMS-MADE LIABILITY INSURANCE

40.     The Application signed and submitted by Kurtz and intended by him to be relied upon by QBE in the issuance of the Policy was knowingly false, untruthful and inaccurate in numerous respects including but not limited to the following:

(a)     ¶ 5 of the Application required Absolute to ""[L]ist officers and ownership percentage." Kurtz failed to list Marinelli as an owner of Absolute and his percentage of ownership;

(b)    ¶ 6 of the Application required Absolute to state if the: ". . . name or structure of your firm ever changed, or has there been an acquisition, consolidation, merger, dissolution, reconstitution or any other change?" Kurtz failed to state that on May 16, 2016 he had executed a letter of intent pursuant to which Scott Marinelli became a shareholder and served as General Counsel and/or Closing Loan Officer and Executive Vice President of Absolute;

(c)    contrary to the representations in ¶ 11(a) of the Application that Kurtz was the sole officer, director, partner and professional employee of Absolute, Kurtz on May 16, 2016 had executed a letter of intent pursuant to which Scott Marinelli became a shareholder and served as General Counsel and/or Closing Loan Officer and/or Executive Vice President of Absolute and a professional employee of Absolute;

(d)    Kurtz failed to state in ¶ 12 of the Application that prior to the date of the Application, Marinelli had conducted real estate closings in the Commonwealth of Pennsylvania without a license in violation of the regulations of the Pennsylvania Insurance Department;

(e)    in ¶ 26 of the Application, Kurtz failed to state that Marinelli had been suspended from the practice of law by the New Jersey Supreme Court on November 17, 2014;

(f)    in ¶ 26 of the Application, Kurtz failed to state that in October 2014 Marinelli's license to act as a title agent was revoked by the State of Maryland for failing to disclose that he had been subject to disciplinary actions in the states of Florida and Ohio;

(g)    in ¶ 26 of the Application, Kurtz failed to state that on July 29, 2013 an order was entered by the State of Washington, Department of Financial Institutions barring Marinelli from participating in the conduct of affairs of any consumer lender subject to licensure; and

(h)    in ¶ 26 of the Application, Kurtz failed to state that prior to the date of the Application, Marinelli and others, as well as the title agency for which he worked, had been permanently enjoined in New Jersey from conducting business and were required to make certain records accessible to the plaintiff title insurance company.

41.    QBE relied upon the truthfulness and accuracy of the statements made by Kurtz in the Application and had the Application been truthful and accurate QBE would not have issued the Policy.

## ABSOLUTE'S FRAUD AND MISPRESENTATIONS IN
## THE DECLARATION FOR REINSTATEMENT

42.    The Declaration (Exhibit H) signed and submitted by Kurtz on April 9, 2018, and intended by him to be relied upon by QBE in reinstating the Policy, was knowingly false, untruthful and inaccurate in numerous respects including but not limited to the following:

(a) As early as December 2017, more than four months prior to signing the Declaration, Kurtz had full knowledge of "facts, circumstances, situations or events that could reasonably be expected to result in a claim, against Applicant [Absolute] or its past or present partners, officers, directors or employees, which may fall within the scope of coverage of the proposed insurance" namely, misfeasance and malfeasance of Marinelli and defalcation in connection with his activities as a shareholder, and/or executive vice

president, general counsel, or closing loan officer and employer of Absolute. In fact, in

December 2017, Kurtz had commenced an investigation into Marinelli's activities;

     (b)     At the April 30, 2018, hearing in connection with First American's

petition for a preliminary injunction, Kurtz testified:

> Q.     [G]oing back as far as April and May of 2017, –. . . what are you doing to check, Mr. Kurtz, about whether or not those mortgages have been paid off?
> A.     Contacting the banks --
> Q.     When did you start
> A.     -- in question.
> Q.     When did you start doing that?
> A.     I am going to say five months ago, as soon as we got suspicious of Mr. Marinelli's practice.

(Exhibit Q) Notes of testimony, April 30, 2018, pp 71-74, 78;

***

     (c) In March 2018, weeks before he signed the Declaration, Kurtz had full

knowledge of "facts, circumstances, situations or events that could reasonably be

expected to result in a claim, against [Absolute] or its past or present partners, officers,

directors or employees, which may fall within the scope of coverage of the proposed

insurance," namely that First American was investigating activities of Absolute, and in

particular, that Absolute had failed to properly carry out its activities as a title agent

including the failure to pay recording fees, taxes and other payments required of it as a

title agent; and

     (d)     At the April 30, 2018 hearing in connection with First American's petition

for a preliminary injunction, Kurtz testified:

> Q.     [H]as First American already been in your office to take material?

15

A.   Yes, a representative for the last month or so has been there just about every day.

Q.   Doing an audit?

A.   Yes, and helping us.

Q.   And taking whatever material they asked for?

A.   Yeah, any and everything that you've asked for we provide for you, if we have it. I have proof but -- well, I don't have proof, but I have been told that --

(Exhibit Q) Notes of testimony, April 30, 2018, pp 71-74, 78.

43.    QBE relied upon the truthfulness and accuracy of the statements made by Kurtz in the Declaration.  QBE would not have reinstated the Policy had Kurtz been truthful and accurate regarding his knowledge of misfeasance and malfeasance of Marinelli and defalcation by Marinelli, in his capacity as a shareholder, executive vice president, and general counsel, closing loan officer or employee of Absolute.

44.    Both the Application and the Declaration signed and submitted to QBE by Kurtz on behalf of Absolute and any past, present or future principal, partner, officer, director, stockholder, trustee or employee of Absolute Abstract Agency, Inc d/b/a Homestead Land Services, including but not limited to Kurtz and Marinelli, contained false and misleading statements and material omissions that were made with knowledge of their falsity and misleading nature and were intended to induce QBE to issue the Policy and subsequently reinstate the Policy and as such constituted a fraud upon QBE.

Wherefore, QBE Specialty Insurance Company respectfully requests that this Court enter an order:

(a) that Policy STA 10158-00 issued by QBE Specialty Insurance Company is *void ab initio*;

16

(b) counsel appointed by QBE Specialty Insurance Company to defend Absolute Abstract Agency, Inc d/b/a Homestead Land Services, Elwood C. Kurtz and Scott Marinelli may withdraw as counsel subject to their obligations under the Rules of Professional Conduct;

(c) upon motion and hearing, that Absolute Abstract Agency, Inc. d/b/a Homestead Land Services, Elwood C. Kurtz and Scott Marinelli shall reimburse QBE Specialty Insurance Company for all legal fees and costs paid to appointed counsel by QBE Specialty Insurance Company; and

(d) QBE Specialty Insurance Company be afforded such other and further relief as the court may deem proper.

LITCHFIELD CAVO, LLP

Lawrence M. Silverman (Bar ID No. 17854)
1515 Market Street, Suite 1220
Philadelphia, PA  19102
Telephone:  215.557.0111
Facsimile:  215.557.3771
silverman@litchfieldcavo.com
Attorneys for Plaintiff
QBE Specialty Insurance Company